## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                                  No. 19-244

DEVIN WEAVER                                          SECTION I

## <u>ORDER AND REASONS</u>

Before the Court is a motion[1] to vacate, set aside, or correct a sentence filed by defendant Devin Weaver ("defendant") pursuant to 28 U.S.C. § 2255. The government filed a response and a supplemental response in opposition.[2] In addition, defendant filed a motion[3] to appoint counsel in connection with his motion pursuant to § 2255. For the reasons set forth below, the Court denies both motions.

## I. BACKGROUND

In December 2021, defendant was charged in a superseding indictment.[4] Count 1 charged defendant with aiding and abetting a carjacking in violation of 18 U.S.C. §§ 2119(1) and 2.[5] Count 2 charged defendant with aiding and abetting the brandishing of a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2.[6] Count 3 charged defendant with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 2.[7]

---

[1] R. Doc. No. 225.
[2] R. Doc. No. 230 (response); R. Doc. No. 235 (supplemental response).
[3] R. Doc. No. 229.
[4] R. Doc. No. 85.
[5] *Id.* at 1.
[6] *Id.* at 2.
[7] *Id.*

Prior to trial, co-defendant Tommie Mango ("Mango") pleaded guilty to carjacking and brandishing a firearm in furtherance thereof.[8] The factual basis for Mango's plea implicated defendant[9] and stated that defendant and Mango each brandished a firearm in order to force the victim out of her boyfriend's car.[10]

The government introduced evidence tending to show the following at trial.[11] Mango went to visit defendant, who was located at his girlfriend's house.[12] Defendant suggested to Mango that they go rob somebody, to which end they made wigs to be used as disguises.[13] Around 1:00 a.m., the men spotted a woman sitting in a parked car, and defendant encouraged Mango to follow through with their plan.[14] Defendant remained nearby a fence as Mango approached the vehicle and told the victim to get out of the car.[15] Both men were disguised in wigs at the time. Because the victim hesitated, Mango struck her and removed her from the vehicle.[16] Mango then took control of the car, picked up defendant, and drove off.[17] They stopped at a gas station on the West Bank of New Orleans where they disposed of all the victim's personal belongings except for two smartphones.[18] Police arrived and arrested Mango in the

---

[8] R. Doc. No. 70.
[9] *See* R. Doc. No. 72.
[10] *See id.* at 2.
[11] R. Doc. No. 230, at 1–4.
[12] *Id.* at 1.
[13] *Id.*
[14] *Id.* at 2
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*

victim's car, but defendant was able to flee the scene.[19] Later that morning, the victim tracked her smartphone to the defendant's girlfriend's home.[20] Police executed a search of the house wherein they found the victim's smartphone, a wig that matched another wig in the car, as well as a bullet that matched the bullets in a firearm used during the carjacking.[21]

The victim testified that she saw a second individual holding a gun near the fence.[22] Mango also testified.[23] As the Fifth Circuit found on direct appeal, Mango's testimony established that defendant

> suggested the robbery, helped create the disguises, berated Mango for hesitating when they found their potential victim, assisted in the getaway and attempt to get rid of evidence in the car, fled from the scene when discovered by police, and tried after the fact to get Mango to lie for him and take sole responsibility for the offense.

*United States v. Weaver*, No. 22-30794, 2024 WL 616859, at *1 (5th Cir. Feb. 14, 2024).

The jury found defendant guilty of all three counts.[24] Defendant thereafter moved for judgment of acquittal.[25] His motion challenged the sufficiency of the evidence supporting his convictions.[26] The Court denied the motion[27] and

---

[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *See* R. Doc. No. 151, at 2.
[24] R. Doc. Nos. 151–152 (trial minute entries); R. Doc. No. 153 (jury verdict form).
[25] R. Doc. No. 163.
[26] R. Doc. No. 163-1, at 2.
[27] R. Doc. No. 168.

subsequently sentenced defendant to 168 months in total as well as three years of supervised release.[28]

Defendant thereafter appealed.[29] He sought reversal of all three convictions by challenging the sufficiency of the evidence supporting his carjacking conviction.[30] The Fifth Circuit found that sufficient evidence supported defendant's carjacking conviction and affirmed defendant's three convictions. *See id.* at *1–2. It held that, "[v]iewed in the light most favorable to the Government, ample evidence supports the jury's finding Weaver guilty of aiding and abetting carjacking."[31] *Id.* at *1. It also concluded that "Mango's testimony was corroborated by significant circumstantial evidence." *Id.* at *2.

In his motion, defendant raises six grounds for relief pursuant to § 2255.[32] Five of the six grounds assert ineffective assistance of counsel.[33] The remaining ground asserts prosecutorial misconduct in withholding "beneficial evidence."[34]

---

[28] R. Doc. No. 194, at 2–3.

[29] R. Doc. No. 192.

[30] Fifth Cir. Case No. 22-30794, R. Doc. No. 52, at 16.

[31] To convict a defendant of carjacking pursuant to § 2119, the government must prove that: the defendant, (1) while possessing a firearm, (2) took from the person or presence of another (3) by force and violence or intimidation (4) a motor vehicle which had moved in interstate or foreign commerce. *See United States v. Harris*, 960 F.3d 689, 692 (5th Cir. 2020). To convict a defendant of aiding and abetting a carjacking pursuant to § 2, the government must prove (1) that the defendant associated with the criminal venture (i.e., carjacking), (2) participated in the venture, and (3) sought by action to make the venture succeed. *See United States v. Sorrells*, 145 F.3d 744, 753 (5th Cir. 1998).

[32] R. Doc. No. 225, at 14–23.

[33] *See id.*

[34] *See id.* at 18–19.

## II. STANDARDS OF LAW

### a. 28 U.S.C. § 2255

Pursuant to 28 U.S.C. § 2255(a), a federal prisoner may "move the court which imposed [his] sentence to vacate, set aside, or correct [his] sentence" on the grounds "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." The petitioner bears the burden of proving his claim by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). However, courts "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel." *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). An evidentiary hearing is required unless it is "conclusively" evident from the filings that the defendant is not entitled to relief. 28 U.S.C. § 2255(b).

### b. Ineffective Assistance of Counsel

"An ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *United States v. Owens*, 94 F.4th 481, 486 (5th Cir. 2024) (citation modified). Claims for ineffective assistance of counsel are governed by the two-part standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a defendant "must show that (1) his counsel's performance was

deficient and (2) the deficient performance prejudiced the defense." *See Owens*, 94 F.4th at 486.

Counsel's assistance is deficient if it "fell below an objective standard of reasonableness." *Id.* (citation modified). Judicial scrutiny of counsel's performance is "highly deferential" and applies a "strong presumption" that counsel's assistance was reasonable. *See Strickland*, 466 U.S. at 689. Deficient assistance of counsel prejudices a defendant if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 694. "A failure to establish either deficient performance or resulting prejudice defeats the claim." *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

The *Strickland* framework also governs claims of ineffective assistance of appellate counsel. *See Wicker v. McCotter*, 783 F.2d 487, 497 (5th Cir. 1986). To prove prejudice in the appellate context "requires a showing that [the appellate court] would have afforded relief on appeal. *United States v. Phillips*, 210 F.3d 345, 350 (5th Cir. 2000).

## III. ANALYSIS

The Court will now address each of defendant's grounds for relief in turn. The Court will then consider defendant's motion to appoint counsel.

### a. Defendant's § 2255 Motion

#### *i. Ground one*

Defendant first argues that his counsel was ineffective because he failed to object to statements made during the government's closing arguments regarding

6

Mango's credibility.[35] Defendant does not identify the specific statements to which his counsel should have objected.[36] However, defendant does explain that, because his case was a "hearsay trial," such an objection "would have likely produced a different outcome at trial."[37]

The Fifth Circuit has recognized that "whether to object during closing argument is a matter of trial strategy that a federal habeas court should not lightly second-guess." *Wilson v. Cockrell*, 75 F. App'x 983 (5th Cir. 2003); *see also Adams v. Quarterman*, 324 F. App'x 340, 353 (5th Cir. 2009) ("Further, in addition to *Strickland*'s presumption that counsel's conduct falls within the wide range of reasonable professional assistance, the nature of Adams's particular argument here requires him to overcome a substantial barrier to relief: 'A decision not to object to a closing argument is a matter of trial strategy . . . .'" (quoting *Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992))).

The Court has reviewed the transcript of the government's closing argument. During closing arguments, the government addressed Mango's credibility on several occasions. For example, the government stated that, although Mango would benefit at his sentencing by testifying at defendant's trial, Mango "ha[d] to tell the truth" because he "ha[d]n't been promised a thing."[38] The government then asked the jury to "[l]isten to [Mango's] testimony and then compare that to the evidence that you

---

[35] *See id.* at 14.
[36] *See id.*
[37] *Id.*
[38] R. Doc. No. 214, at 15:16–15:22.

saw in the case, that you received in the case, and simply ask yourself who do you think is telling the truth."[39]

Such statements are not objectionable, and the Court cannot discern any nonfrivolous basis upon which defense counsel could have objected. Accordingly, the Court does not find that defense counsel was deficient with respect to the government's closing arguments. Because defendant cannot show deficient performance on the part of his counsel, his ineffective-assistance-of-counsel claim with respect to the government's closing arguments claim necessarily fails. *See Chavez*, 193 F.3d at 378.

### *ii. Ground two*

Second, defendant argues that defense counsel was ineffective insofar as he failed to conduct a pretrial investigation.[40] Defendant contends that defense counsel was ineffective in this respect for two reasons. First, he "failed to investigate whether additional individuals were present in the stolen vehicle."[41] Second, he did not investigate an alleged discrepancy between the victim's testimony that both men had guns and bodycam footage that allegedly showed otherwise.[42] Without explaining how, defendant contends that such investigations could have changed his outcome at trial.[43]

---

[39] *Id.* at 16:3–18:8.
[40] R. Doc. No. 225, at 15–16.
[41] *Id.* at 15.
[42] *Id.* at 16.
[43] *See id.* at 15–16.

Defendant's first reason demonstrates neither deficient performance nor prejudice. "A particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *United States v. Bernard*, 762 F.3d 467, 474 (5th Cir. 2014) (citation modified). Based on the facts of this case, counsel's decision not to investigate whether there were other persons in the stolen vehicle was entirely reasonable. Simply put, there is no evidence with which to surmise that other persons were present in the stolen vehicle. The victim made clear during her testimony that she saw only two men when she was carjacked.[44] Furthermore, the surveillance footage at the gas station showed only two men with the stolen vehicle.[45] And an officer with the New Orleans Police Department who was surveilling the stolen vehicle at the gas station testified that, after defendant exited the vehicle at the gas station, only Mango was inside the stolen vehicle.[46] Defense counsel's decision not to investigate whether other persons were present in the stolen vehicle was eminently reasonable given the utter lack of evidence tending to show that other persons were present.

In addition, defendant's bare conclusory allegation of prejudice in this regard is unconvincing. Whether additional persons were involved in the carjacking would not have precluded the jury from finding defendant guilty of carjacking. Furthermore, as the Fifth Circuit found, there is significant circumstantial evidence corroborating Mango's testimony establishing defendant's active participation in the offense. *See*

---

[44] *See* R. Doc. No. 213, at 35–36,
[45] *See id.* at 67–70.
[46] *See id.* at 66.

*Weaver*, 2024 WL 616859, at *2.[47]  Since there is not a reasonable probability that the jury would have reached a different result had there been other persons in the stolen vehicle, defendant has failed to demonstrate prejudice.

Defendant's second reason fares no better because defendant's allegation—that the victim's testimony that both preparators had guns was contradicted by bodycam footage—is baseless. The bodycam footage was played at trial, and the officer whose bodycam recorded the footage and who interviewed the victim testified that the victim stated on the bodycam footage that both perpetrators had guns.[48] Because defendant cannot demonstrate by a preponderance of evidence that there was a discrepancy to be investigated, the Court cannot conclude that defense counsel was deficient by not investigating the same.

_____

[47] Specifically, the Fifth Circuit identified as significant corroborating evidence:

> (1) the victim's testimony that she saw another robber holding a gun by the gate next to her vehicle at the time of the offense and that the carjacker picked up the other man as he fled in the stolen car; (2) Weaver's presence in the vehicle following the carjacking; (3) the discovery of the victim's cellphone in Weaver's home later that morning; (4) the additional discovery in Weaver's home of a wig matching the victim's description of the one worn by the carjacker and matching the one found in the stolen vehicle at the time of Mango's arrest; (5) the further discovery in Weaver's home of a bullet matching the ones found in the firearm used in the carjacking; (6) surveillance camera footage and testimony confirming Weaver's flight from law enforcement; and (7) the letter Mango received from Weaver in prison concocting a defense, containing details concerning the offense that could have been known only by a person committing it.

*United States v. Weaver*, No. 22-30794, 2024 WL 616859, at *2 (5th Cir. Feb. 14, 2024).

[48] R. Doc. No. 213, at 27.

*iii. Ground three*

Defendant's third ground for relief consists of two parts. First, defendant seemingly contends his counsel was deficient because his counsel erroneously represented that defendant had no objections to the presentence investigation report ("PSR").[49] Second, his counsel was deficient because he did not cite to the trial transcript in defendant's post-verdict motion for judgment of acquittal.[50] Neither reason justifies relief pursuant to § 2255.

As to defendant's first reason, defendant cannot demonstrate prejudice. At sentencing, there was confusion as to whether defendant had any objections to the PSR. The final PSR stated that defendant, through counsel, filed a statement of no objections to the PSR.[51] At the beginning of the sentencing hearing, the Court asked defense counsel whether he and defendant had the opportunity to review the PSR.[52] Defense counsel stated that they did.[53] The Court then asked whether there were any corrections, modifications, deletions, or comments that defense counsel or defendant would like to make to the PSR.[54] Both defense counsel and defendant indicated that there were not any.[55] The Court then asked defendant directly whether he reviewed the PSR, and he stated that he did.[56]

---

[49] R. Doc. No. 225, at 16–17.
[50] *See id.* at 17.
[51] R. Doc. No. 182, at 22.
[52] R. Doc. No. 207, at 2.
[53] *See id.*
[54] *See id.*
[55] *See id.*
[56] *See id.* at 2–3.

Subsequently, defense counsel asked the Court for permission to approach the bench, which the Court granted.[57] After the bench conference, the Court stated for the record that defendant did have several objections to the PSR that were not properly filed with the Court.[58] The Court then resolved each objection.[59] After the hearing, the Court granted defense counsel leave to file defendant's same objections into the record.[60]

Even if the confusion over whether defendant had objections to the PSR is attributable to defense counsel's deficient performance, defendant's objections were heard and ruled upon by the Court.[61] Defendant does not allege that he had additional objections that were not brought to the Court's attention, and he does not specify the substance of any such objections. *Cf. Cruz v. United States*, No. 22-cr-107, 2025 WL 1811759, at *5 (N.D. Tex. July 1, 2025) ("In addition, because the Court fully considered counsel's untimely objections, Cruz suffered no prejudice").

---

[57] *Id.* at 4.

[58] *Id.* at 4–5.

[59] *See id.* at 5–10.

[60] R. Doc. No. 198 (order granting leave); R. Doc. No. 199 (defendant's objections to the PSR). At sentencing, defendant's objections to the PSR were: 1) to ¶ 16, which stated that defendant pointed a handgun at the victim during the carjacking; 2) to ¶ 28, which stated that defendant possessed a firearm and demanded the victim's keys during the carjacking; 3) to ¶ 39, which assigned two points to defendant's criminal history score for simple criminal damage to property; and 4) to ¶ 41, which assigned two points to defendant's criminal history score for simple battery. *See* R. Doc. No. 207, at 5–11. Defendant detailed these exact objections in his "objections to the pre-sentence report." *See* R. Doc. No. 199. In his § 2255 motion, defendant does not identify any objection that he had to the PSR that was not decided by the Court.

[61] Defendant makes an oblique reference to the amount of time that his counsel spent visiting him in jail during the sentencing phase of his case. However, defendant provides no specifics as to how the amount of time that his counsel spent visiting him in jail affected the outcome of his sentence. *See* R. Doc. No. 225, at 17.

As to defendant's second claim, defendant again cannot demonstrate prejudice. Even if defense counsel was deficient by not citing to the trial transcript, that alleged deficient performance did not influence the Court's decision to deny the motion. In its Order and Reasons, the Court made clear that it "consider[ed] the parties' memoranda and view[ed] the evidence in the light most favorable to the prosecution."[62] Furthermore, the government's opposition contained specific citations to the transcript and attached relevant portions of the trial transcript as an exhibit.[63] Because the Court viewed the evidence presented at trial for itself when deciding defendant's motion for judgment of acquittal, the Court's ruling on that motion would not have been otherwise even if defense counsel had cited the trial transcript. For this reason, defense counsel's alleged failure to cite to the transcript did not amount to *Strickland* prejudice.

### iv. Ground four

Defendant's fourth ground is defendant's only ground for relief that does not claim ineffective assistance of counsel. Defendant essentially asserts that the government committed a so-called *Brady* violation.[64] Specifically, defendant alleges that the government failed to provide defendant with "beneficial evidence" that the gun used by Mango during the carjacking was stolen from a business two days prior to the carjacking.[65] In defendant's view, this information was beneficial because it

---

[62] R. Doc. No. 168, at 2.
[63] *See* R. Doc. No. 167.
[64] R. Doc. No. 225, at 18.
[65] *See id.*

could have given the jury a "different outlook" on Mango's testimony insofar as it "gave reason" for Mango's "lenient sentence and plea deal."[66]

Pursuant to the doctrine first announced in *Brady v. Maryland*, 373 U.S. 83 (1963), "the government violates a defendant's due process rights if it withholds evidence that is favorable to the accused and material to the defendant's guilt or punishment." *United States v. Hankton*, 51 F.4th 578, 602 (5th Cir. 2022) (citation modified). "To establish a *Brady* violation, a defendant must show: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material." *Grace v. Hooper*, 123 F.4th 800, 805 (5th Cir. 2024) (citation modified).

As to the first prong, "*Brady* applies to evidence of witness credibility." *Id.* at 806. As to the second prong, a "*Brady* claim fails if the suppressed evidence was discoverable through reasonable due diligence." *Reed v. Stephens*, 739 F.3d 753, 781 (5th Cir. 2014). "Evidence that is turned over to the defense during trial has never been considered suppressed." *Hankton*, 51 F.4th at 603. Whether the government intentionally or inadvertently withheld evidence is irrelevant for *Brady* purposes. *See United States v. Glenn*, 935 F.3d 313, 319 (5th Cir. 2019) ("Bad faith is irrelevant to whether the Government has met its obligations under *Brady*.").

As to the third prong, "evidence qualifies as material when there is any reasonable likelihood it could have affected the judgment of the jury." *Grace*, 123 F.4th at 805 (citation modified). Such a likelihood exists if "the favorable evidence

---

[66] *Id.* at 19.

could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *See id.* (citation modified). The essential question, therefore, is whether the defendant "received a fair trial, understood as a trial resulting in a verdict worthy of confidence," in the absence of the allegedly suppressed evidence. *See id.* at 806 (citation modified). To determine the materiality of particular evidence, courts must evaluate "the cumulative effect of all such evidence." *See id.* at 805 (citation modified).

In its supplemental memorandum, the government states that, "[i]n discovery in this case, the defendant was provided the police report in which Mango was charged by the State with possession of a stolen firearm and possession of a firearm with an obliterated serial number."[67] That firearm was recovered from the carjacked vehicle and was stolen in a simple burglary of a business two days prior to the carjacking.[68] In the original indictment, the government charged both Mango and defendant with possession of a stolen firearm that had been shipped and transported in interstate commerce in violation of 18 U.S.C. 922(j).[69]

The government does not have documentation establishing that it produced the police report.[70] However, it represents that both of the government's trial attorneys and defense counsel confirmed that the police report was produced in discovery.[71] The government also points out that the stolen firearm was identified in

---

[67] R. Doc. No. 235, at 2.
[68] *See id.*
[69] R. Doc. No. 1, at 2.
[70] *See* R. Doc. No. 235, at 2 n.1.
[71] *See id.* at 2.

the indictment.[72] The government further states that defendant was aware that Mango and the government entered into a plea agreement.[73]

The government's supplemental memorandum seems to make three arguments to defeat defendant's *Brady* claim. First, the "beneficial evidence" was not suppressed because it was in fact produced.[74] Second, given that the firearm was identified in the indictment (which, the Court notes, also charged defendant with illegal possession of the stolen firearm), information regarding its provenance was discoverable through reasonable diligence. Third, the evidence was not material because defendant was aware of the plea agreement between Mango and the government. The Court finds that the evidence was not material within the meaning of *Brady*.[75]

The materiality of the subject evidence is defeated by the critical fact that the jury was made aware by the government, on multiple occasions, that Mango had agreed to testify against defendant in exchange for the dismissal of the count charging possession of a stolen firearm.[76] Indeed, the government advised the jury of the same during its opening statement.[77] What the government did not explain to the

---

[72] *See id.*

[73] *See id.*

[74] The Court need not determine whether the police report was in fact produced in order to resolve defendant's claim.

[75] Because the evidence concerns the credibility of one of the government's witnesses, the Court will assume for the sake of its analysis that the evidence is favorable for the purposes of *Brady*.

[76] R. Doc. No. 213, at 12, 134–35.

[77] *Id.* at 12.

jury was that the stolen firearm that Mango used in the carjacking had been stolen from a business two days prior to the carjacking.

Information regarding when and from where the firearm was stolen cannot "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *See Grace*, 123 F.4th at 805 (citation modified). The jury knew that Mango was initially charged with possession of a stolen firearm and that Mango agreed to cooperate with the government in exchange for the dismissal of his § 922(j) charge. The information regarding the provenance of the firearm is not material for *Brady* purposes because it does not provide further explanation as to Mango's incentives for testifying against defendant. Stated differently, the cumulative effect of the other impeachment evidence is such that the marginal value of the subject evidence is minimal. *See id.*

Furthermore, defense counsel pressed Mango at trial about his plea agreement and cooperation with the government.[78] He even reviewed the favorable sentencing implications of the agreement for Mango.[79] Simply put, the jury was well aware that Mango had incentives to testify against defendant but nonetheless chose to credit Mango's testimony and—to borrow the Fifth's Circuit's words—the "significant circumstantial evidence" corroborating it. *See Weaver*, 2024 WL 616859, at *2. Given that the jury had the requisite information for assessing Mango's credibility, the

---

[78] *See id.* at 166–172.
[79] *See id.* at 167–68.

Court concludes that defendant received a fair trial consistently with *Brady*. *See Grace*, 123 F.4th at 806 (citation modified).

### v. Ground five

Defendant's fifth ground for relief claims that his counsel was ineffective when he failed to communicate a plea offer.[80] He cites no evidence in support of this argument.[81] Counsel for the government, who prepared the government's response and who also was one of the government's attorneys prosecuting defendant at trial, states that he "is not aware of any plea discussions or offers regarding a plea presented by the government to defense counsel."[82] He further states that "[d]efense counsel informed the government that it was [defendant]'s intention to proceed to trial and that he maintained his innocence in this matter."[83] "Therefore," the government avers, "no [plea] discussions were had."[84]

On the morning of trial, the Court conducted a *Frye* hearing with defendant, defense counsel, and counsel for the government.[85] At the hearing, counsel for the government stated that the government had not made any plea offers to defendant or his counsel at any time.[86] Defense counsel stated that he agreed with what the

---

[80] R. Doc. No. 225, at 21.
[81] *See id.*
[82] R. Doc. No. 230, at 12.
[83] *Id.*
[84] *Id.*
[85] R. Doc. No. 151.
[86] R. Doc. No. 233, at 2:14–2:16.

government stated regarding plea offers.[87] Defendant then stated that he believed what the government and his counsel stated was correct.[88]

Having reviewed the record of this case, the Court cannot find any evidence—let alone a preponderance thereof—showing that defense counsel failed to communicate plea offers to defendant. Accordingly, defendant's claim for ineffective assistance of counsel with respect to the plea process fails.

Furthermore, defendant's claim fails also because he has not demonstrated prejudice. Where a defendant alleges that he has not been notified of a plea offer because of ineffective assistance of counsel, the defendant "must demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 147 (2012). Defendant does not allege that he would have been interested in accepting a plea offer had the government made one. There is not a scintilla of evidence from which the Court could conclude defendant has been prejudiced in this regard.

*vi. Ground six*

Finally, defendant asserts that he is entitled to relief pursuant to § 2255 because he received ineffective assistance of appellate counsel.[89] Specifically, defendant argues that his appellate counsel was ineffective because his appellate

---

[87] *Id.* at 2:17–2:19.
[88] *Id.* at 2:20–2:23.
[89] R. Doc. No. 225, at 22.

counsel challenged only defendant's carjacking conviction on appeal.[90] In defendant's view, his appellate counsel should have also challenged the gun convictions.[91]

Defendant's assertions do not fully reflect the record. Defendant's appellate brief did focus specifically on the sufficiency of the evidence underlying his carjacking conviction.[92] However, appellate counsel maintained that, because every defendant who commits carjacking necessarily violates § 924(c) as well, "the jury's verdict with respect to the § 924(c) violation must also be reversed."[93] Appellate counsel further asserted that reversal on the carjacking and § 924(c) convictions "automatically disposes of" defendant's § 922(g)(1) conviction.[94]

Although appellate counsel focused specifically on the sufficiency of the evidence underlying the carjacking conviction, his brief makes clear that it was challenging and seeking reversal of all three convictions.[95] Accordingly, at the outset of the brief's argument section, appellate counsel asserted that "[t]he government failed to prove beyond a reasonable doubt that [defendant] committed the charged crimes."[96] Indeed, the Fifth Circuit understood as much. In its opinion, the Fifth Circuit explained that, although defendant's argument "focuse[d] on his carjacking conviction," he "maintain[ed] that, because that conviction cannot stand, his

---

[90] *See id.*
[91] *See id.*
[92] Fifth Cir. Case No. 22-30794, R. Doc. No. 52, at 20–34.
[93] *See id.* at 34–35.
[94] *See id.* at 35.
[95] *See id.*
[96] *Id.* at 16.

convictions on the related gun charges must also be reversed." *Weaver*, 2024 WL 616859, at *1 n.1.

At bottom, then, defendant's argument is that appellate counsel was deficient insofar as he did not separately challenge the sufficiency of the evidence underlying his § 924(c) and § 922(g) convictions. This argument is meritless.

Appellate counsel was not deficient for failing to raise separate challenges to the sufficiency of the evidence underlying his § 924(c) and § 922(g) convictions. It appears that appellate counsel channeled his resources to attack the one conviction upon which the other two assertedly depended. That tactic is reasonable, for which reason defendant's challenge to the effectiveness of his appellate counsel fails. *Cf. Ellis*, 873 F.2d at 840 ("Here it appears that appellate counsel chose to concentrate on the six strongest points of error on appeal; that is a reasonable tactic. Ellis has not directed our attention to any issues that counsel failed to raise upon which he was likely to prevail on appeal. This claim is without merit.").

### b. Motion to Appoint Counsel

Defendant requests that this Court appoint him counsel in connection with his § 2255 motion.[97] The Court will deny that request.

A prisoner collaterally attacking his convictions does not enjoy a right to counsel pursuant to the Sixth Amendment. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (explaining that the Sixth Amendment right to counsel extends no further than a defendant's first appeal of right). However, there is a statutory right to

---

[97] R. Doc. No. 229.

appointed counsel if the Court holds an evidentiary hearing. *See United States v. Vasquez*, 7 F.3d 81, 83 (5th Cir. 1993).

Otherwise, pursuant to the Criminal Justice Act, a federal district court may appoint counsel for financially eligible defendants seeking relief pursuant to § 2255 if it determines that the interests of justice so require. *See* 18 U.S.C. § 3006A(a)(2)(B). "In determining whether the interests of justice require the appointment of counsel, the Court may consider the adequacy of movant's statement of the issues to be decided, the complexity of those issues, and the merits of movant's intended claim for relief." *United States v. Dorsey*, No. 15-cr-186, 2024 WL 3028239, at *1 (E.D. La. June 17, 2024) (Vance, J.). Where the defendant's challenges are meritless, the interests of justice do not require the appointment of counsel. *See United States v. Johnson*, 398 F. App'x 964, 970 (5th Cir. 2010) ("As Johnson's appeal is without merit and oral argument is not necessary, Johnson has not shown that the interests of justice require the appointment of counsel.").

The Court does not find that the interests of justice require the appointment of counsel in this case. For the reasons explained above, defendant's § 2255 motion is meritless. "Because supplemental briefing by counsel would not assist the court and would be an inefficient use of judicial resources, appointment of counsel would not be in the interest of justice." *See Self v. Blackburn*, 751 F.2d 789, 793 (5th Cir. 1985).

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that defendant's motion pursuant to 28 U.S.C. § 2255 is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's motion to appoint counsel is **DENIED**.

New Orleans, Louisiana, July 29, 2025.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**